

**FILED**
7/7/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
MAN



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Kenton Girard et al.<br><br>        Plaintiff,<br><br>v.<br><br>Village of Glencoe et al.<br><br>        Defendants. | **Case No. 1:24-cv-06882**<br><br>District Judge Rebecca R. Pallmeyer<br><br>Magistrate Jeannice W. Appenteng<br><br>**NOTICE AS TO FEDERALISM**<br>**OFFENDING TRANSCRIPT** |

Plaintiff in his recent application for an ex parte TRO (Dkt[117]) referenced the open court declarations and reasoning by Cook County Judge Eileen M. O'Connor in the context wherein Judge O'Connor imposed sanctions against Plaintiff under *Minor Child Gw et al. v. Jane F. Girard*, Cook County Case No. 2024-L-012053 specifically to punish Plaintiff for filing pleadings in federal court, in violation of her previous directive that Plaintiff "is not allowed" to file civil lawsuits against judges or attorneys.

That transcript is attached hereto. Judge O'Connor's outrageous and contemptuous disregard for the limits of her state court jurisdiction is manifest from that transcript.

Dated: July 7, 2025

Respectfully Submitted,

KENTON GIRARD, *In Pro Se*

/s/ Kenton Girard
965 Forestway Drive
Glencoe, IL 60022
Email: kg5252@yahoo.com
Tel: 773-575-7035

*Plaintiff's Notice as to Transcript from Federalism Offending Hearing*

1        IN THE  CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                COUNTY DEPARTMENT, LAW DIVISION
2
    Minor Child GW;              )
3   Minor Child GR;              )
    and Kenton Girard,           )
4                                )
                    Plaintiffs,  )
5                                )
          v.                     ) No. 2024-L-012053
6                                )
    Jane F. Girard;              )
7   Phyllis Amabile, M.D.;       )
    Gwenn Waldman;               )
8   Breanna Traub;               )
    Vanessa L. Hammer, Esq.;     )
9   Joel L. Levin, Esq.;         )
    Karen V. Paige, Esq.;        )
10  Candace L. Meyers, Esq.;     )
    Molly M. Carmody, Esq.;      )
11  and Judge Rossana P.         )
    Fernandez,                   )
12                               )
                    Defendants.  )
13
           TRANSCRIPT OF PROCEEDINGS VIA HYBRID ZOOM
14                     VIDEOCONFERENCE
                          BEFORE:
15
                 HON. EILEEN M. O'CONNOR
16                   CIRCUIT JUDGE
                     LAW DIVISION
17                  MOTION SECTION
                     CALENDAR D
18                   ROOM 2207
              RICHARD J. DALEY CENTER
19            50 WEST WASHINGTON STREET
               CHICAGO, ILLINOIS 60602
20
                  PROCEEDING ON:
21
             WEDNESDAY, JUNE 18, 2025
22         11:06 A.M. CDT - 11:59 A.M. CDT
23
                   REPORTED BY:
24
         Cheryl E. Nicholson, CSR No. 084.001932



```
 1    APPEARANCES:

 2    (Appearing in Person:)
      On Behalf of the Plaintiffs, Minor Child GW, Minor
 3    Child GR, and Kenton Girard, pro se:

 4         MR. KENTON GIRARD
           965 Forestway Drive
 5         Glencoe, Illinois 60022
           P. 773-575-7035
 6         kg5252@yahoo.com

 7         - and -

 8    (Appearing via Zoom:)
           LAW OFFICE OF TOMA MAKEDONSKI
 9         5250 Old Orchard Road
           Skokie, Illinois 60077
10         BY:  TOMA MAKEDONSKI, J.D.
                ATTORNEY AT LAW
11              P. 773-272-5491
                (Email unknown)
12
      (Appearing via Zoom:)
13    On Behalf of Defendant Jane F. Girard:

14         BEERMANN LLP
           161 North Clark Street, Suite 3000
15         Chicago, Illinois 60601
           BY:  MR. MATTHEW D. ELSTER
16              PARTNER
                P. 312-621-9700
17              mdelster@beermannlaw.com

18         - and -

19    (Appearing in Person:)

20         KAPLAN PAPADAKIS & GOURNIS PC
           180 North LaSalle Street, Suite 2108
21         Chicago, Illinois 60601
           BY:  MR. ERIC D. KAPLAN
22              PARTNER
                P. 312-827-0531
23              ekaplan@kpglaw.com

24    (Cont'd)
```



```
1   APPEARANCES - (Cont'd:)

2   (Appearing via Zoom:)
    On Behalf of Defendant Joel L. Levin, Esq.:
3
        LAW OFFICES OF MICHAEL B. ELMAN & ASSOCIATES,
4       LTD.
        10 South LaSalle Street, Suite 1420
5       Chicago, Illinois 60603
        BY:  MR. MICHAEL B. ELMAN
6            OWNER?
             P. 312-541-0903
7            (Email unknown)

8   (Appearing in Person:)
    On Behalf of Defendant Phyllis Amabile, M.D.:
9
        CUNNINGHAM MEYER & VEDRINE, P.C.
10      One East Wacker Drive, Suite 2200
        Chicago, Illinois 60601
11      BY:  MR. MICHAEL R. SLOVIS
             EQUITY PARTNER
12           P. 312-578-8804 (Dir.)
             P. 312-578-0049 (Main)
13           mslovis@cmvlaw.com

14  (Appearing in Person:)
    On Behalf of Defendant Matthew D. Elster, in Case
15  No. 25-cv-4551; and On Behalf of Defendants Karen
    V. Paige, Esq., Candace L. Meyers, Esq., and Molly
16  M. Carmody, Esq., in Case No. 2024-L-012053:

17      WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
        161 North Clark Street, Suite 4500
18      Chicago, Illinois 60601
        BY:  MR. ROBERT F. MERLO
19           ASSOCIATE ATTORNEY
             P. 312-821-6170 (Dir.)
20           P. 312-704-0550 (Main)
             Robert.Merlo@wilsonelser.com
21
    ALSO PRESENT:
22
        (Via Zoom:)
23      MS. JANE GIRARD, A PARTY DEFENDANT

24
```



1                        INDEX

2
                                               PAGE
3

4   Remaining Defendant Phyllis Amabile, M.D.'s
    Motion to Dismiss.................................5
5
    Dismissed Defendants' Motion for
6   Sanctions......................................5-46

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



```
 1                    (WHEREUPON, the following

 2                     proceedings were had in open court,

 3                     at bench, to wit:)

 4         THE COURT:  Attorneys on Girard.

 5              Okay.  So we are here on a motion for

 6   sanctions and also one remaining defendant's

 7   motion, right?  Your client?

 8         MR. SLOVIS:  I had a -- I had a motion to

 9   dismiss granted, and then there was an amended

10   pleading filed.

11         THE COURT:  Complaint.  Got it.  And I did

12   review that.  And I did get the second, whatever

13   complaint this is.  I did review it.

14              Okay.  What do we want to start with?

15         MR. SLOVIS:  Um, I think mine can be done

16   completely, quickly.  The amended complaint does

17   not include my client, so I assume that there's a

18   dismissal at that point.

19         THE COURT:  Oh.  An order 622.  So is that

20   correct?

21         MR. GIRARD:  That is correct.

22         THE COURT:  Okay.  So you're dismissed with

23   prejudice.

24         MR. SLOVIS:  Thank you, Judge.
```



1          THE COURT:  That was easy.

2                Okay.  Now we can turn to the motion

3     for sanctions.

4                Are you on this case, Miss, the court

5     reporter?

6                Okay.  So this is Minor Child GW v.

7     Girard, 24-L-12053.

8                We are here on defendants' motion for

9     137 sanctions, defendant Beermann defendants, which

10    are the attorneys of record representing Ms. Jane

11    Girard, in -- in an unrelated -- or, somewhat

12    related, but not before me -- a domestic relations

13    matter between Mr. Girard and Jane Girard.

14                However, these defendants were

15    previously named in this legal case before me.

16    This Court dismissed those defendants with

17    prejudice, finding that any of the allegations of

18    their conduct would be protected by the absolute

19    litigation privilege.  And there were additional

20    bases for those defendants being dismissed, that

21    the Court will not rehash today.

22                Subsequent to that dismissal, defendants

23    brought the instant motion seeking sanctions.

24                The Court has reviewed the briefs and is



 1   ready to take argument.

 2              So, Counsel, you may proceed.

 3       MR. MERLO:  Thank you, your Honor.

 4              Robert Merlo -- M-e-r-l-o -- on behalf

 5   of dismissed defendants Meyers, Carmody, and Paige.

 6              I won't rehash too much what's set forth

 7   in our brief, your Honor, but there are four

 8   primary points.

 9              Before I touch on those, I want to

10   emphasize what's set forth in our reply brief,

11   which is that in response to this sanctions motion

12   which laid out why this complaint was -- plainly,

13   is, was plainly frivolous, as was the arguments in

14   the response to our motion to dismiss, Mr. Girard

15   made arguments that effectively sought to shift the

16   blame for these frivolous pleadings that only he

17   signed.  The complaints -- the complaint and the

18   response to my clients' motion to dismiss -- are

19   the only two documents about which my clients are

20   concerned, because, then, that your Honor dismissed

21   them.

22              Attorney Makedonski's name is not signed

23   on either of those pleadings, so to try to pass the

24   buck, so to speak, in the response to the sanctions



1    motion, is -- is -- is demonstrative of how

2    frivolous this whole matter is.

3              Mr. Girard, in signing those documents,

4    undertook the obligations under Rule 137 -- with

5    which your Honor is very familiar -- and did not

6    undertake any investigation into relevant fact or

7    law, didn't have a good faith belief that it was

8    these claims were supported by the law or a

9    modification of an existing law.

10             In the response brief, Mr. Girard

11   advances an argument that Attorney Makedonski --

12   again, so -- Attorney Makedonski didn't sign the

13   response.  And these are problems in and of

14   themselves, as set forth in the motion.  Mr. Girard

15   knows he can't represent his minor children, but by

16   signing those two pleadings, he did so.

17             But returning to what I was just saying,

18   to say that, "Oh, Attorney Makedonski's thinking or

19   interpretation of the term 'law enforcement

20   personnel' within the ANCRA statute also

21   encompassed officers of the court -- and that was

22   based on the cites of, like, legaldefinitions.com

23   or something -- is a blatant attempt to testify, as

24   I noted.  But it's also legally erroneous, because



1   that statute, as we've discussed in the motion to
2   dismiss and in this briefing, expressly
3   acknowledges that attorneys aren't mandatory
4   reporters, because it would infringe on an
5   attorney's obligation of confidentiality to their
6   client.  It would also infringe on the
7   attorney-client privilege.  And that's why that
8   statute defines "law enforcement personnel" as the
9   neighborhood police officer, the county sheriff.
10  Law enforcement personnel.  Not officers of the
11  court.  So that's a good faith interpretation.  And
12  to then try to get out of or get around an argument
13  that it was a frivolous argument by saying, "Oh,
14  well, the attorney that filed an appearance six
15  weeks after I filed this pro se complaint, that was
16  his interpretation," is a wholly frivolous and
17  meritless argument.  And it's this sort of conduct
18  that's been set forth.
19          These arguments -- these legally,
20  demonstratively, meritless legal arguments -- have
21  been advanced in several different fora against
22  these defendants, against other Beermann attorneys,
23  in a blatant attempt to delay those domestic
24  relations proceedings, to prejudice the Beermann



1   firm and their attorneys, forcing them to continue

2   to incur fees and, perhaps most importantly,

3   wasting this court's time, federal judges' times,

4   wasting half this building, wasting resources time,

5   money on Mr. Girard's frivolous complaints,

6   emergency motions, responses, replies.  Frivolous.

7   This is why Rule 137 exists.

8            The time is now for this Court to put a

9   stop to this.  And all the legal bases, the

10  specific legal, technical bases why Rule 137

11  sanctions are proper now, as set forth in our

12  briefing, I wanted to take this opportunity before

13  your Honor to emphasize the practical, the

14  situation that's really unfolding here, and to

15  emphasize that your Honor really need not look

16  farther than the response to the sanctions motion

17  to see just how blatant, blatant and meritless all

18  these arguments Mr. Girard is, and has been making,

19  are, and we respectfully request that your Honor

20  grant this motion and grant us leave to bring a fee

21  petition.

22      THE COURT:  Okay.  So, a couple things I want

23  to say before you respond, Mr. Girard.

24            So, I, the Court, am required to hold



1    litigants, whether represented or not, to the same

2    standards, okay?  Except for the fact that you are

3    not an attorney, you are not governed by the

4    Illinois professional rules of conduct for

5    attorneys, okay?  However, when I saw this motion,

6    I was very, very surprised, once I started reading

7    it, to find out what is going on.  I try as best as

8    I can as a judge to provide self-represented

9    litigants with citations to requisite laws and

10   statutes, cases, because that falls within my

11   purview.  I'm allowed to do that.

12            Notwithstanding that, I am not allowed

13   to counsel nor provide litigants with legal advice

14   or guidance.  What struck me as alarming was the

15   footnote, that appears on page 1, that just last

16   week, in a federal lawsuit, you have now filed or

17   amended your complaint or filed a subsequent action

18   in which you have named additional judges and

19   additional attorneys from the Beermann law firm to

20   advance the same legal theories that I already

21   rejected.  And, more importantly, not the legal

22   theories that I rejected, but the legal theories I

23   applied.  And I explained where the law states that

24   the Beermann defendants are, as a matter of law.



1   It is not factual question for a jury to determine.

2   That they are protected, they are immunized, by the

3   absolute litigation privilege.  I also ruled that

4   the judges that were previous defendants in this

5   case are immunized by all the judicial immunities

6   that are available to those courts as well.  And,

7   so, while I am not -- I have zero jurisdiction, or

8   no jurisdiction over what occurs in the federal

9   action, and, therefore, cannot sanction you in that

10  action, I will tell you, if you were a lawyer and

11  you did what they're alleging you did, I would not

12  hesitate to sanction you.  So, that is one thing

13  that jump out at me.

14          The ANCRA thing, I'm not going to get

15  into.  I'm going to give you a pass on that one.

16  Do I think it is a stretch that you had a good

17  faith belief that attorneys were encompassed under

18  that statute because of the phrase "officers of the

19  court"?  No.  But I am going to give you the

20  benefit of the doubt that you did.

21          But that all said, it is clear to me

22  that this is a custom and practice that you have of

23  continuing to file baseless lawsuits against

24  defendants who are immunized, and I want to know



1  why I shouldn't sanction you for doing that.

2       MR. GIRARD:  Yes, your Honor.

3            Um, actually, that was a different

4  cause.  And the reason of the other case is because

5  the case was removed to federal court, yet the

6  judges made rulings, and in the rulings, they

7  actually acknowledged that the case was removed to

8  federal court, and they didn't have jurisdiction;

9  that they held a hearing and wrote an order, two

10 orders.

11      THE COURT:  So what?

12      MR. GIRARD:  Because my understanding is, the

13 federal court had jurisdiction at that time, and

14 they can't continue hold when the case was removed

15 to federal court, yet they continued to have

16 hearings and sign orders.

17      THE COURT:  Okay.  And I explained this ad

18 nauseam when we were here last.  That even if all

19 that is true, that doesn't allow you to file a

20 lawsuit against a judge because you don't like the

21 rulings they make.  Or, if they did something they

22 failed to have jurisdiction and did so, anyway,

23 that's a void order.  But that doesn't mean you get

24 to go sue them.  And we discussed that, and I gave

1  you the benefit of the doubt, and I went through

2  all these pleadings.  I mean, my time, the lawyers'

3  time -- why are we continuing to try to sue judges

4  and lawyers when they're immunized?

5       MR. GIRARD:  Well, your Honor, it was because

6  I felt that they -- and I apologize if I

7  misinterpreted, and I hear what you've said, but I

8  thought they --

9       THE REPORTER:  I'm sorry.  Can you step up.

10      MR. GIRARD:  Oh, yes.

11      THE REPORTER:  Closer.  Thank you.

12           Yes, Judge.  I'm sorry.

13      MR. GIRARD:  My interpretation was that once

14  the case was removed to federal court, they

15  couldn't write an order or have a hearing.  And

16  they continued to do so, even though I told the

17  judge that.  I said, "Hey, this has been moved,"

18  yet they continued to do it, and so, as you said,

19  it's voidable.  But I don't know how to void that

20  without bringing it to someone else's attention.

21  If I could, I would follow the way to void it.  I

22  wouldn't know how to do that other than to bring a

23  case, and I am sorry if that's the wrong venue.  I

24  didn't know how else to call attention to an order.



1      THE COURT:  Why, last week, when you did this,

2  did you not know, after I told you, the only way to

3  proceed on the next channel is to go up the chain

4  in the court system?  So, if you believe that the

5  trial court erred, you have to file a motion to

6  reconsider or, possibly, an appeal or move to

7  vacate a void order.  But I -- I explained all of

8  this to you, that you have no legal basis to file a

9  legal civil action against a judge for something

10  they did, acting in their judicial capacity.  If I,

11  just as a judge and I hit you with a car, then you

12  can sue me.  Judicial immunity doesn't extend to

13  that.  But everything that we discussed, and

14  everything that was the subject of this case, all

15  had to do with issues that you took with the legal

16  recourse or the legal action that the Beermann

17  defendants took.  And then I can't remember what

18  judges you sued here, but you had issue, you took

19  issue with their rulings that were made within

20  their scope of their employment as a state of

21  Illinois judge.

22      MR. GIRARD:  No, none of them was the issue of

23  the ruling.  That was not the issue.  It was the

24  fact that they held a case, a hearing, and then



1  wrote an order that they didn't have jurisdiction

2  to do.

3        THE COURT:  That is -- that is within the --

4        MR. GIRARD:  Okay.

5        THE COURT:  -- what they do as judges.

6        MR. GIRARD:  I'm sorry.  That's --

7        THE COURT:  So he's pleading ignorance.  And

8  what is your response, Counsel?

9        MR. MERLO:  First of all, your Honor, what he

10  is talking about, what Mr. Girard is talking about,

11  the removal thing, that is not what your Honor was

12  talking about, footnote 1.  There's footnote 1, in

13  both the motion and our reply.  Referenced the same

14  case, which is a whole new, separate lawsuit, Case

15  No. 25-cv-4551, in which Mr. Girard has sued Matt

16  Elster of the Beermann firm, Judge Scannichio, and

17  several other judges.  And as to my client, Mr.

18  Elster, he's alleged negligence, which, as your

19  Honor knows, is privileged because everything was

20  in furtherance of my client's representation of his

21  client.

22             The removal counsel's talking about is

23  another tactic that he's taken in the Domestic

24  Relations Division.  He did the following.  He



1  became -- I won't say that he did it -- Mr. Girard

2  became a defendant in a countersuit filed by his

3  now wife within the Domestic Relations action,

4  wherein Marissa, his now wife, alleged that Kenton

5  had breached the terms of some postnuptial

6  agreement.  Mr. Girard -- who's currently on his

7  phone -- then removed it to federal court, arguing

8  that the arguments therein implicated

9  constitutional protections or something like that,

10  and the court remanded it to state court because

11  there's plainly no jurisdiction, and the remand

12  order is on file in that Domestic Relations

13  proceeding.

14          But that's not what your Honor was

15  talking about.  So, his claim of ignorance or his

16  obfuscation is not relevant at all to what your

17  Honor asked.  Your Honor asked, Why do you keep

18  suing people who are immunized, judges and lawyers?

19  He doesn't have an answer for that, evidently.  And

20  as far as suing judges, if the judge, lawyers, also

21  have absolute litigation privilege, it doesn't

22  matter.  He's filed, at my count, one, two, three,

23  four, five -- if you count certain proceedings

24  within the Domestic Relations case itself, six --



1   six actions.  He -- maybe two of them were filed by

2   his now wife.  But, nonetheless, all related to my

3   client's representation of their clients in the

4   Domestic Relations proceedings.

5           The absolute litigation privilege in

6   Illinois is well settled.  It's broad.  Anything

7   pertinent to an attorney's representation in

8   furtherance of their representations of a client is

9   privileged.  You cannot be sued about it.  You will

10  be tossed out on the pleadings.  And it keeps

11  happening.  He keeps doing it.  He's wasting my

12  client's time, their money, your Honor's time, this

13  whole circuit court's time and resources, and it

14  needs to -- somebody needs to put their foot down

15  and say enough's enough.

16      THE COURT:  Okay.  Any reply?  Any other than

17  response?

18      MR. GIRARD:  Um, just that the other lawsuits

19  were different causes of action, and I understand

20  what you said; and I thought there was no other

21  recourse for me to do other than I what I did, and

22  I just don't have any further response.

23      THE COURT:  Okay.  And I would give you -- I

24  generally give people the benefit of the doubt, Mr.



1   Girard, but I explained all of this to you at the

2   last time we were here.  And when you argued in

3   opposition to the judge's motions to dismiss, when

4   you argued in opposition to the Beermann

5   defendants' motions to dismiss, in fact, you

6   discussed -- I explicitly recall discussing -- how

7   you challenge the issue of jurisdiction.  And so I

8   can't ignore the fact that you're continuing to do

9   this, even though you know now, even as a

10  nonlawyer, as a self-represented litigant.  As I

11  said at the outset, if you were a lawyer, I would

12  almost find I was abusing my discretion by not

13  entering some sort of sanction.  You are a

14  self-represented litigant, and so I am going to

15  keep that in mind, but I am going to grant

16  sanctions.  If I could, I would bar you from ever

17  suing them, but I can't.  That's something I can

18  do, prospectively.  All I can do is enter sanctions

19  for the actions have been taken in this litigation.

20      MR. GIRARD:  Your Honor, please may I speak?

21      THE COURT:  Yes.  Yes.

22      MR. GIRARD:  Is it -- is it not time-barred?

23  I mean, they waited months to file it, and they did

24  it based on other factors outside of this case, not



1   this case, so it was well past the 30 days.  And it

2   was -- all of my cases have been -- brought because

3   I felt there was a clear wrong.  And I hear what

4   you're saying, and I did think that this was

5   different, because they were violating

6   jurisdiction, and I didn't know how to get a court

7   order voided when you violate jurisdiction.

8   Knowing that, I mean, there's missing judicial

9   transfer orders.  And, it was a rule of federal

10  court, and they note it in the order.  Judge

11  Johnson wrote in the order, "I know this has been

12  moved to federal court," yet he still wrote an

13  order, and I didn't know how else to address that.

14      THE COURT:  Okay.  I will address your issue

15  on finality.

16          The motion for sanctions is timely, and

17  the order dismissing them with prejudice was not a

18  final order in this litigation because there are

19  current actions pending against other -- I'm

20  sorry -- there are current counts pending against

21  other defendants in the case.  The only way it

22  would have become final in terms of making this

23  motion -- "untimely" is not the right word -- to

24  divest me of jurisdiction over it would be if --



1          In fact, I don't even think I could,

2     because a 304 was a dismissal with prejudice.

3          That what you're asking me, from a

4     jurisdictional basis, again:  Whether I have

5     jurisdiction to hear this motion for sanctions.

6          And I guess do you want to respond

7     before I make my own ruling on it?  But he's

8     arguing that the dismissal as to you was with

9     prejudice.

10        MR. MERLO:  Right.

11        THE COURT:  Therefore, this court apparently

12    lost jurisdiction to hear a motion brought by

13    you --

14        MR. MERLO:  No.  The rule --

15             Sorry.

16        THE COURT:  -- because you're no longer in the

17    case, I guess.

18        MR. MERLO:  Right.

19             Your Honor, the rule is plain that when

20    there's a final judgment entered, you have 30 days.

21    I don't want to speak for the Supreme Court's

22    reasoning, but presumably, too, when the case is

23    over, you've got 30 days to take it up on file.  If

24    you've got to appeal, do it quickly.  It doesn't



1    apply here.  And for good measure, we cited in our

2    brief The Law Offices of Brendan R. Appel v.

3    Georgia's Restaurant and Pancake House, 2021

4    Ill.App. (1st) 192523, which found that the

5    plaintiff timely filed a 137 motion 36 days after

6    the dismissal of opposing parties' claim because

7    additional claims between other parties were still

8    pending.

9         THE COURT:  Yes.  I'm sorry.  I had -- I just

10   had a brain fart for a minute.  Absent, so, the

11   only way that order would have become final is if

12   in fact that Beermann put 304 language in there.

13   It was not in the order, correct?

14        MR. MERLO:  It was --

15        THE COURT:  Did not seek 304(a) language?

16        MR. MERLO:  So, anyway, it was denied.

17        THE COURT:  Okay.  So, therefore, the Court

18   does have jurisdiction to entertain the motion

19   before me for a Rule 137 sanction.

20            I am going to grant the motion; however,

21   I don't know what that sanction is gonna look like.

22   I know your motion has sought attorneys' fees and

23   costs expended in this action.

24            What I'd like to do is set this over for



1   a hearing on the petition, because it's unlikely

2   I'm gonna grant sanctions for all of the time and

3   attorney time in defending the action.  I'd like to

4   see, though, what the number of hours is in defense

5   of this action, and I will go from there, okay?  I

6   don't want -- I do -- I do want to take into

7   account Mr. Girard is self-represented and

8   sanctions should be compensable, or commensurate

9   with the sanctionable conduct and commensurate with

10  the ability to pay and so forth.

11           So, with all that said, I'm going to

12  reserve as to what I am going to enter as the

13  sanction, but the motion itself is granted.

14           So how much time do you need to provide

15  an affidavit in support of your sanctions?

16      MR. MERLO:  Um, may I have, um, 28 days, your

17  Honor?  Um, I apologize for asking for that long.

18  I'd like to get a copy of the transcript.

19      THE COURT:  No, that's fine.  That's fine.

20  So, July 16 to file a petition.

21           Mr. Girard, you have an opportunity to

22  rely to that, if you'd like.

23      MR. GIRARD:  Yes, I would, your Honor.

24      THE COURT:  Okay.  How much time do you need



1    after July 16th?

2         MR. GIRARD:  Um, I'm not sure what's

3    reasonable.

4         THE COURT:  14 days is typical.

5         MR. GIRARD:  Could I have 21?

6         THE COURT:  Sure.  August 6th.

7         MR. GIRARD:  And, your Honor, it's still

8    applicable, even though those suits were separate

9    from this?  I'm just asking.

10        THE COURT:  Okay.  Good question.  So I think

11   what you're asking is, can the Court consider a

12   matter that has facts that occurred outside of this

13   litigation.  The Court can, if the Court can take

14   judicial notice of it.  And, so, I can take

15   judicial notice of legal actions that are filed,

16   whether they're in this state or other states,

17   really anywhere around the country.  And so I did.

18   You are correct.  I was actually gonna put

19   something else on the record so it's clearer.  But

20   my ruling today is not limited to my review of

21   those actions and taking judicial notice of it.  It

22   is, in large part, of some cumulative amount of

23   facts, one of which hasn't been discussed, is that

24   while I understand counsel --



1           What is your attorney's name for the

2     children, again?

3        MR. GIRARD:  Makedonski.

4        THE COURT:  -- I understand Mr. Makedonski is

5     only of record for them, you are acting as their

6     representative, and so I would expect that you

7     would have some discussion with an attorney in

8     terms of your representation of yourself and then

9     also as an independent representative of the

10    children.  So, I do feel I sort of gave you a pass

11    on your lack of legal acumen and lack of legal

12    knowledge -- I'm don't want to use the term

13    ignorance, but I'm going to -- ignorance of the law

14    when I initially ruled on several of the motions,

15    but I do find that at this juncture your continued

16    behavior and continuing to litigate against these

17    defendants has to be stopped, okay?  And you

18    understand the legal reasons.  I've advised you of

19    them.  I've advised you of the proper bases on

20    which to seek appellate review of the trial court,

21    whether it be because they failed or lacked

22    jurisdiction of an order which they entered or

23    whether you believe they erred, and I explained

24    several times that the way to do that is not by



1  suing them in civil court.  And, so, that is really

2  the reason I'm entering sanctions, because I find

3  that if I don't, you're going to continue to do

4  this, which I did consider, the federal actions

5  that were filed subsequent to this, to my ruling in

6  support of that evidence, a reasonable inference to

7  be drawn from the evidence.

8      MR. GIRARD:  Was -- was that anything?

9  Because he did mention a signing, but that was

10  simply an oversight, that Attorney Makedonski

11  didn't sign that pleading.

12      THE REPORTER:  I can't hear you, Mr. Girard.

13  You have to come up closer and speak louder.

14      MR. GIRARD:  I was asking that one of the

15  things he brought up was Makedonski signing that

16  complaint.  But that was simply an oversight.  We

17  were in discussion, we talked a lot about it, and

18  we both put that together, so it was an oversight.

19      THE COURT:  Yeah.  And that, as we referred to

20  today, was not the basis as to why I'm awarding

21  sanctions.

22      MR. GIRARD:  Okay.  I just wanted to make

23  sure.  I'm sorry.  I misunderstood.

24      THE COURT:  No, no.  That's okay.



1        MR. MERLO:  What?

2              I'm sorry, your Honor.  He's forcing me

3    to.

4              The complaint was filed in October of

5    '24.  Mr. Makedonski filed appearances in December

6    of '24.  I note that.

7        THE COURT:  Okay.  Fair enough.  So that's

8    additional.  Let me walk through this argument.  So

9    your point is, there was some other, prior

10   litigation, in which Mr. Girard was already legally

11   aware that he could not represent the minors.

12       MR. MERLO:  Yes.

13       THE COURT:  And that was in a previous federal

14   action --

15       MR. MERLO:  It is federal action.

16       THE COURT:  -- that was filed prior to this

17   one.

18       MR. MERLO:  Right.

19       THE COURT:  Okay.

20       MR. MERLO:  And our motion to dismiss was

21   filed, and that argument was made therein.  The

22   argument was made, I believe, at a presentment date

23   early on in this case.

24       THE COURT:  Okay.



1      MR. MERLO:  And then Mr. Makedonski files

2   appearances.  But after Mr. Makedonski files

3   appearances, Mr. Girard goes ahead and files his

4   opposition to the motion to dismiss, again, without

5   Mr. Makedonski's signature.

6      THE COURT:  But you're saying, at the time he

7   filed the pleading in this case, the complaint, he

8   had not; he had not yet retained counsel, correct?

9      MR. MERLO:  That's what I'm saying.

10     THE COURT:  Okay.

11     MR. MERLO:  He's saying something different.

12     THE COURT:  All right.

13     MR. MERLO:  But, yes.

14     THE COURT:  So the complaint was filed by Mr.

15  Girard, on behalf of himself and the minor

16  children, when he had already been advised by a

17  prior court -- not me, but in federal, federal

18  district court -- that he could not do that, he did

19  not have legal standing to do that.

20     MR. MERLO:  I don't know if the court itself

21  said that, but certainly we raised the issue.

22     THE COURT:  Okay.  All right.  So, again,

23  further basis as to ignorance of the law --

24          Who was it?  One of those philosophers.



1          -- is no excuse.

2      MR. KAPLAN:  Right.

3      THE COURT:  But I generally, um, sort of give

4  you the benefit of the doubt for so long.

5          But he brings up another point.  When

6  you filed this legal case, you knew you couldn't do

7  it on behalf of the kids, and you did it, anyway,

8  which is why they had to bring, in part, their

9  motion, along with several other defendants.

10          But, anyway, I digress.

11          So let me just give you a hearing date.

12  8-6 is the response.  You're gonna have to meet me

13  in 2501 on this, because I'm gonna be in the trial

14  room, so I'm gonna have to give you, like, a

15  lunchtime, when I'm not in a jury.  Let's do August

16  18th at noon.  I will rule on this, 'cause it's a

17  continuation of my ruling today; the case, though,

18  will proceed otherwise before Judge Beach,

19  so . . . .  Just as an FYI.

20      MR. KAPLAN:  So are you -- ?  Are we getting

21  a -- ?  Are you moving on and we're getting a

22  different judge?

23      THE COURT:  Yeah.  So, I'm going to 2501,

24  effective June 30th; Judge Beach is coming over



1   here from 2210; and Judge Flanagan is taking her

2   call back.

3        MR. KAPLAN:  Oh, really?

4        THE COURT:  Yes.

5        MR. KAPLAN:  That's great.

6        THE COURT:  Um, so what else is going on?  Do

7   you guys need another date before 8-18, in here, or

8   are we good?

9        MR. KAPLAN:  Um, judge, as for me, I represent

10  Jane Girard, his former wife.

11       THE REPORTER:  I'm sorry.  Your name, please.

12       MR. KAPLAN:  My name is Eric Kaplan.  I

13  represent Jane Girard, his former wife.  She's

14  party to this lawsuit and several others that he's

15  brought as well.  We were waiting to respond to the

16  lawsuit, because all of this other stuff was going

17  on.

18       THE COURT:  Right.  I recall.

19       MR. KAPLAN:  He just filed the second amended

20  complaint.  It sounds like counsel is going to move

21  to dismiss.  There's one more defendant left.

22       THE COURT:  Levin.

23       MR. KAPLAN:  Yes.  It sounds like he may want

24  you to decide today whether or not that's



1    dismissed.  I'm gonna let him talk, and then I'll

2    talk last, 'cause I think that that's how we've

3    already handled it.  He's on the Zoom right now.

4         THE COURT:  Okay.  So I'm gonna just ask you

5    guys to sit tight get some of these other people

6    out of here, and then we can continue, okay?

7              Mr. Levin, are you present, or through

8    counsel?

9         MR. ELMAN:  Your Honor, Michael Elman.  I'm

10   sorry to cut in, but -- I can hardly hear, but I

11   heard the name Levin.  I represent Mr. Levin.

12        THE COURT:  Okay.

13        MR. ELMAN:  And, again, I apologize to the

14   Court.  I can hardly hear anything.

15        THE COURT:  I know.  This is why I hate Zoom.

16   It is what it is.  Just hold up for five minutes.

17   I'm gonna run through my 11:00, and I will recall

18   it.  These are probably statuses from Judge

19   Flanagan.

20                  (Time noted:  11:36 a.m. CDT.)

21                  (WHEREUPON, the Court considered

22                   other, unrelated matters on the

23                   call.)

24        [THIS LINE LEFT INTENTIONALLY BLANK]



```
 1                    (WHEREUPON, the following further
 2                     proceedings of record were resumed
 3                     in open court, at bench, to wit:)
 4                    (Time noted:  11:43 a.m. CDT.)
 5         THE COURT:  All right.  So, Mr. Elman, can you
 6    hear me?
 7         MR. ELMAN:  I can hear you much better now,
 8    your Honor, although I cannot see you.
 9         THE COURT:  Okay.  I'll turn the video on.  I
10    kind of have to scream for you to hear me.
11         MR. ELMAN:  I can hear you much better now.
12         THE COURT:  Okay.  So where are you at on
13    pleadings?
14         MR. ELMAN:  Right.  Well, your Honor, uh,
15    you -- you told me that I didn't have to file a
16    response to the amended complaint until we spoke,
17    um, and I'm hoping your Honor doesn't require me to
18    file a response.  Uh, to remind the Court, the
19    court has already made a finding that Mr. Levin was
20    appointed by the court, and the Count VI, which is
21    directed against Mr. Levin, is for legal
22    malpractice.  That claim is clearly within the
23    scope of his appointment, and there's absolute
24    immunity for such a claim.  Uh, and I have to tell
```



1    you, your Honor, in my research, I have not found a

2    single case in the state of Illinois where a

3    court-appointed child's rep has not had immunity

4    from a claim for legal malpractice.  It does not

5    exist.  The immunity is absolute.  And I'm hoping

6    that my client no longer has to incur any

7    additional attorneys' fees in this case.

8              You have previously dismissed the other

9    appointed attorneys.  The only reason you hadn't

10   dismissed Mr. Levin was because you wanted to see

11   that order where he was appointed.  You saw the

12   order.  You made the finding in one of your

13   previous court orders.  And, again, the amended

14   complaint is simply a legal malpractice claim,

15   which is clearly within the scope of his

16   court-appointed appointment, so I think it should

17   be dismissed based upon absolute immunity.

18        THE COURT:  Okay.  So, I'm looking at the

19   order appointing.  This is --

20              No.  This is the wrong one.  Hang on.

21        MR. ELMAN:  That order was entered on July 18

22   of 2023.

23        THE COURT:  Oh, yeah.  I've got it.  Sorry.  I

24   was confused for a second.  I see it.



1              Okay.  I'm looking at the July 18, 2023,

2      order, entered by Judge Boyd, in which he appointed

3      Joel Levin as the child's representative.  So,

4      there was either an oral or written motion, by Mr.

5      Levin, seeking dismissal, and the court at the

6      time, I believe, either denied it without prejudice

7      or just didn't rule on it, because the court had

8      questions as to what capacity Mr. Levin was working

9      in.

10             This order makes clear -- and it's of

11     note, since we have a record -- that when the

12     probate court appoints an attorney, there are three

13     options that are at least form, created as part of

14     the draft form:  one is a child representative; two

15     is a GAL; and three is the attorney for the minor

16     children.

17             The Court, at the initial motion

18     hearing, had questions about whether Mr. Levin was

19     acting as an attorney for the minor children and/or

20     whether he was acting in a capacity as

21     representative, to determine whether there was

22     immunity available.

23             It is clear to the Court, from looking

24     at the July 18 order, that his role and the scope



1  of his involvement in the probate matter was as

2  child representative, at least according to this

3  order.

4          If I recall, I think Mr. Girard wanted

5  time to replead, to look at whether or not he had

6  also been retained.

7          Is that what the issue was, Mr. Girard?

8      MR. GIRARD:  I'm sorry.  I didn't know we were

9  going to go back to this part of it.  But what

10 happened, my understanding I have -- you know,

11 which I don't have in front of me, but -- Joel did

12 make it very clear to myself and to the children

13 that it is very different being a child rep versus

14 a GAL, and the child rep represents them as an

15 attorney, but does not testify on behalf like a GAL

16 would in court, but he would represent them if

17 there was a trial.  So he made that very clear,

18 that he was representing them as legal counsel in

19 that capacity.  And he went so far as to say that

20 he teaches the differences between GAL and child

21 rep in classes or something.  But he was making it

22 very clear.  There was a clear distinction, that

23 they had attorney-client privilege, and the GAL

24 does not; that he would be representing them in



1  trial, but he would not be, you know, testifying as

2  a GAL would.  So he made that very clear to myself

3  and the children.

4      THE COURT:  Okay.  I'm looking, Counsel.  For

5  whatever reason, when these were originally ruled

6  on, February of '25, I either didn't receive a

7  courtesy copy or I didn't have it as to your

8  client.  And I'm relooking as I speak, and I don't

9  see one.  So was there an argument raised in

10 writing by one of the other defendants that raised

11 the same immunity that you believe is applicable

12 here?  I'm just trying to look for the citation.

13     MR. ELMAN:  Just to refresh the Court's

14 memory, Mr. Levin, through me, actually did file a

15 motion.  There is a motion pending.  I cited the

16 case law.  And I disagree with Mr. Girard's

17 characterization of why we're back here.  The only

18 reason we're back here is because the Court gave

19 Mr. Girard the opportunity to file separate counts.

20 That's what the order states, that Mr. Girard had

21 to file an amended complaint alleging separate

22 counts.  He did do that.  There's now a separate

23 count, Count VI, against Mr. Levin, alleging legal

24 malpractice.  That's what it alleges.  And Mr.



1    Girard can tell you all of the lies he wants about

2    what Mr. Levin told him.  The fact of the matter is

3    that the pleading in front of you alleges matters

4    that occurred in the scope of his appointment, and

5    there's absolute immunity.

6         THE COURT:  Well, all I'm asking you for is

7    the cite.  Is it a case law?  Isn't there a statute

8    on point, that when he is a representative, he is

9    immunized?

10        MR. ELMAN:  There's case law, your Honor.

11        THE COURT:  Okay.

12        MR. ELMAN:  And I've argued to you, your

13   Honor, before, in my written motion, that I had

14   come across absolutely no case law in the state of

15   Illinois that permits a cause of action for legal

16   malpractice against a court-appointed child rep.

17   Your Honor's already found in favor of the other

18   attorneys that were appointed in the court, and I

19   don't think it's . . . .  Mr. Levin wants to cut

20   off the attorneys' fees that he's incurring for

21   something where he was appointed.

22        THE COURT:  Do you know the date of your

23   pleading so I can just bring it out?

24        MR. ELMAN:  Yes, your Honor.  I can pull it.



1    It is -- I think I have it.

2         THE COURT:  Well, this is the Girard case,

3    24-L-12053.  I'm going to ask you to print

4    something.

5         MR. ELMAN:  I'm pulling that up now, your

6    Honor.

7         THE COURT:  Here's the GAL.

8         MR. KAPLAN:  Judge, we're back up.

9         THE COURT:  Sorry.

10        MR. ELMAN:  Your Honor, that motion was filed

11   on December 24.

12        THE COURT:  Okay.  Can you print that out?  It

13   would be for Levin.

14             Okay.  I've just found what I'm looking

15   for in some other co-defendant's motion.

16             I'm looking for the applicable statute.

17             So, under 750 ILCS 5/604.10:

18                  "The court may seek the advice of

19           any professional, whether or not regularly

20           employed by the court, to assist the court in

21           determining the child's best interests."

22             Under 5/506(a):

23                  "In proceedings involving a minor,

24           the court can appoint a lawyer to represent



1           the child, as an attorney would represent an

2           adult, to be the child's representative, or

3           to be the child's guardian ad litem."

4                The Cooney v. Rossiter case.  That's

5    R-o-s-s-i-t-e-r 583 F.3d 967.  That's a 7th Circuit

6    opinion, 2009.

7                In reliance upon that case, this movant

8    cites that:

9                     "Guardian ad litem's court-appointed

10          experts, including psychiatrists, are

11          absolutely immune from damages when they act

12          at the court's discretion."

13               So, quite frankly, it's all coming back

14   to me.  When I looked at the Cooney case back in

15   February, what was somewhat potentially unclear to

16   me is:  Could an attorney that truly is acting on

17   behalf of the minors, in the capacity of counsel,

18   could they be sued for legal malpractice like any

19   other lawyer?

20               This case seemingly says no.  But I

21   don't need to get into that question, because, in

22   reviewing the order, Mr. Levin was not appointed as

23   an attorney.  He was solely appointed as a child

24   representative.  So, therefore, the Court finds



1  that the legal malpractice action against Mr. Levin

2  is dismissed with prejudice for two reasons.

3  Plaintiff cannot establish a duty as to Mr.

4  Levin -- a fiduciary duty as at least it relates to

5  the formation of attorney-client relationship --

6  because he was never retained nor appointed as the

7  attorney for the child.  If he could allege a

8  fiduciary duty between Mr. Levin and the minor

9  children based upon the probate court's appointment

10 of Mr. Levin as child representative, this Court

11 finds that any actions Mr. Levin took in that

12 capacity, and in that fiduciary capacity, would be

13 immunized, based upon the Illinois statute just

14 cited and the Cooney decision interpreting that

15 act.

16         So, for those decisions, for those

17 reasons, the Court is going to grant Levin's motion

18 to dismiss with prejudice, previously filed on

19 12-24 of '24.

20         Hang on one second.  Did you find

21 something?

22         Okay.  Here.  Take the case.

23 24-L-12053.  Just write it on a pen on paper.  Yep.

24         Off the record.



 1                    (WHEREUPON, proceedings were had off

 2                     the record.)

 3                    (WHEREUPON, the following further

 4                     proceedings of record were resumed

 5                     in open court, at bench, to wit:)

 6        THE COURT:  Okay.  Back on.

 7             Go ahead, Mr. Girard.

 8        MR. GIRARD:  This was the thing that he sent,

 9   and he circled it.  This was from Joel.  And you

10   can see, if you scroll down, is confidentiality

11   with the children.  That was our interpretation of

12   that.  Clearly, attorney-client privileged, along

13   with all, how it's different than a child rep.

14        THE COURT:  Okay.

15        MR. GIRARD:  I want you to know that's where

16   it came from.

17        THE COURT:  Understood.

18        MR. GIRARD:  It wasn't a . . . .

19        THE COURT:  So child's representatives do

20   likely have a privilege that's afforded between the

21   representative and the minors, but that doesn't

22   translate, then, into acting as an attorney, okay?

23   When you were referencing earlier the distinction

24   between child reps and guardian ad litems, there is



1   a very a big difference there, because a guardian

2   ad litem is an arm of the court.  They are not

3   there to represent the interests of the child.  The

4   child rep, though, is.  And, so, that's likely

5   what --

6        MR. GIRARD:  Yes.

7        THE COURT:  -- I would presume, Mr. Levin was

8   explaining, okay?

9             So that defendant is dismissed, so we

10  have Ms. Girard remaining.

11            Now that you're remembering, counsel,

12  where are we at?

13       MR. KAPLAN:  Well, Judge, we just got this

14  amended complaint, so we want -- I want to file

15  responsive pleading.

16       THE COURT:  Sure.

17       MR. KAPLAN:  But I have to say, your Honor --

18  I apologize -- I'm about to go on a long, a long

19  trip, and I really am not going to be able to.

20       THE COURT:  How dare you.

21       MR. KAPLAN:  I'm really not going to be able

22  to be in a position to get to this until August

23  1st.

24       THE COURT:  Sure.



1      MR. KAPLAN:  Week and a half to respond?

2      THE COURT:  Yes.

3      MR. KAPLAN:  You know.

4      THE COURT:  Okay.  So, August 1st, for Jane

5  Girard to answer.

6      MR. KAPLAN:  And it'll be answer or otherwise

7  plead.

8      THE COURT:  Yes.  Thank you.

9      MR. KAPLAN:  And I think we're back on 8-18 in

10  front of the new judge, your Honor.  Is that what

11  you said?

12      THE COURT:  Well, that's gonna be me, because

13  I have to rule on that.

14      MR. KAPLAN:  That's the one at noon.  Okay.

15  All right.

16      THE COURT:  Why don't I give you two dates,

17  and then you can -- I'll give you a date, sometime

18  after the 18th, for everyone else to come back here

19  so you don't need to come to that sanctions

20  hearing, okay?  So let's also put a date of the

21  21st, at 9:00 a.m., okay?  For status on the

22  pleadings.

23      MR. KAPLAN:  Judge, I think I'm on a

24  mediation.



1        THE COURT:  Oh, okay.

2        MR. KAPLAN:  Is it possible to do it the

3   following week?

4        THE COURT:  Yes.  Just give me a date.

5        MR. KAPLAN:  How about the 29th?

6        THE COURT:  Uh, sure.

7        MR. KAPLAN:  28th, 29th?  28th, let's do.

8        THE COURT:  28th.  8-28, at 9:00 a.m.

9        MR. KAPLAN:  Okay.

10        THE COURT:  The next date in 2207.

11        MR. KAPLAN:  So we're doing different orders,

12   I assume, so my -- our order -- will just say,

13   amended:

14                "A second amended complaint having

15         been filed, we have till 'X' date to respond.

16         Case set for status on the pleadings, 8-28 --

17        THE COURT:  Perfect.

18        MR. KAPLAN:  " -- 9:00 a.m."

19             In this, this same courtroom, your

20   Honor?

21        THE COURT:  2207, yes.

22        MR. KAPLAN:  Okay.

23        THE COURT:  And then, um, I'm sure Beermann is

24   doing the order on the sanctions, okay?



1      MR. KAPLAN:  Okay.  Thank you.

2      THE COURT:  So thank you all.  I will --

3          Yes?

4      MR. ELMAN:  Is anybody going to include Mr.

5   Levin -- Levin -- or should I do my own order?

6      THE COURT:  Why don't you do your own order.

7      MR. ELMAN:  Okay.  Very good, your Honor.

8      THE COURT:  Okay.  Go ahead.

9      MR. ELMAN:  Thank you very much.

10      THE COURT:  You're welcome.

11      MR. GIRARD:  Could you please do a written

12   finding on the sanctions.

13      THE COURT:  You mean today?

14      MR. GIRARD:  Yeah.  Like, from yourself.  Of

15   the findings.

16      THE COURT:  I am just gonna incorporate the

17   transcript of proceedings, okay?  So, if you would

18   like to order it, you can.  That will serve as,

19   essentially, a writ.  I can't change anything I put

20   on the record.

21      MR. GIRARD:  I understand.

22      THE COURT:  So when I have a court reporter, I

23   often just incorporate it, okay?  So if you do need

24   a record to take up to the appellate court, you'll



1  have it.  You just have to order the transcript.

2       MR. GIRARD:  Okay.

3       THE COURT:  Okay?

4       MR. GIRARD:  All right.

5       THE COURT:  All right.  You guys are all set.

6  Take care.

7            (Hearing concluded at 11:59 a.m.

8             CDT.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



1                   CERTIFICATE OF OFFICER

2

3              I, CHERYL E. NICHOLSON, a Certified

4      Shorthand Reporter of the State of Illinois, do

5      hereby that I reported in shorthand the TRANSCRIPT

6      OF PROCEEDINGS VIA HYBRID ZOOM VIDEOCONFERENCE

7      BEFORE:   HON. EILEEN M. O'CONNOR, CIRCUIT JUDGE,

8      LAW DIVISION, MOTION SECTION, CALENDAR D, ROOM

9      2207, RICHARD J. DALEY CENTER, 50 WEST WASHINGTON

10     STREET, CHICAGO, ILLINOIS 60602, PROCEEDING ON:

11     WEDNESDAY, JUNE 18, 2025, 11:06 A.M. CDT - 11:59

12     A.M. CDT; and that the foregoing is a true,

13     complete and correct transcript of proceedings

14     herein aforesaid, as appears from my stenographic

15     notes so taken and transcribed under my personal

16     direction.

17              IN WITNESS WHEREOF, I do hereunto set my

18     hand at West Chicago, Illinois, this 2nd day of

19     July, 2025.

20
                    _Cheryl E. Nicholson_

21     Cheryl E. Nicholson, CSR No. 084.001932

22

23

24

