UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENTON GIRARD, Minor Child GW., and Minor Child GR., <br><br>    Plaintiffs,<br><br>    v.<br><br>VILLAGE OF GLENCOE, ILLINOIS, Detective RYAN MCENERNEY, MARIA PAREDES, GWENN WALDMAN, BREANNA TRAUB, BEERMANN LLP, JOHN M. D'ARCO, JAMES M. QUIGLEY, ENRICO J. MIRABELLI, Judge WILLIAM S. BOYD, and Judge RENEE G. GOLDFARB,<br><br>    Defendants. | No. 24 C 6882<br><br>Judge Rebecca R. Pallmeyer |

**ORDER**

The motions to dismiss Plaintiffs' amended complaint filed by Defendants John M. D'Arco, James M. Quigley, Enrico J. Mirabelli, and Beermann LLP (collectively, the "Beermann Defendants") [34]; Judges William S. Boyd and Renee G. Goldfarb [81]; Gwenn Waldman [70]; Breanna Traub [66]; Maria Paredes [104]; and Detective Ryan McEnerney and the Village of Glencoe, Illinois [56] are granted. Defendants Boyd and Goldfarb's previously-filed motion to dismiss [30] addressing Plaintiffs' initial complaint is stricken as moot. All claims brought by Plaintiffs Gw. and Gr. are dismissed without prejudice. Plaintiff Kenton Girard's claims against Defendants Boyd and Goldfarb are dismissed with prejudice to the extent that they arise from orders entered by those Defendants in their capacity as judges of the Circuit Court of Cook County. Kenton Girard's remaining claims are dismissed without prejudice to proceedings in state court or to refiling at the conclusion of state court custody proceedings. The Clerk is directed to enter judgment in favor of Defendants Boyd and Goldfarb and dismiss all other Defendants without prejudice. Civil case terminated.

**STATEMENT**

**I.  Background**

Kenton Girard ("Kenton") and his ex-wife, Jane Girard ("Jane"), are embroiled in a custody dispute concerning their minor daughters, Gw. and Gr.; that case remains pending in the Domestic Relations Division of the Circuit Court of Cook County. In this federal action, Kenton, Gw., and Gr. have made a sprawling set of explosive allegations about various individuals who have some connection to the state court custody dispute. Plaintiffs' operative pleading is their amended complaint filed on December 9, 2024. (*See generally* Amended Compl. [73].)

The central premise of Plaintiffs' lawsuit is that their custody case is one of many Cook County domestic relations disputes corrupted over the past decade by a scheme of bribery and favor-trading orchestrated by lawyers at Beermann LLP, the law firm representing Jane in the Girard custody battle. (*See, e.g., id.* ¶¶ 9–12, 35–40.) With respect to their case in particular, Plaintiffs allege that the Beermann Defendants bribed or otherwise improperly influenced (either directly or via intermediaries) three sets of Defendants: (1) William S. Boyd and Renee G. Goldfarb, judges of the Circuit Court of Cook County's Domestic Relations Division who were previously assigned to the Girard dispute[1]; (2) Breanna Traub, a court-appointed therapist assigned to provide counseling to Gw.; and (3) Ryan McEnerney, a detective with the Glencoe Police Department. Plaintiffs allege that the Beermann Defendants bribed Boyd and Goldfarb to secure favorable rulings for Jane in the custody dispute; induced Traub to improperly disclose confidential information learned in sessions with Gw. to Jane; and bribed McEnerney (via an intermediary), who had investigated Plaintiffs' allegations that Jane sexually assaulted Gw. and Gr., dissuading McEnerny from filing criminal charges against Jane. (*See id.* ¶¶ 40–44, 121, 138, 144.) Plaintiffs appear to suggest that the payment of the bribe to McEnerney came about when McEnerney, at some point, reached out to Jane "in hopes of receiving an illicit payment in exchange for" his declining to seek charges against her. (*See id.* ¶ 181.)

Plaintiffs further allege that another therapist appointed by the state court, Defendant Gwenn Waldman, improperly disclosed confidential information learned in sessions with Gr. both to other court-appointed personnel and to Jane, and that an employee of the Illinois Department of Children and Family Services (DCFS), Defendant Maria Paredes, committed an impropriety by changing her mind about whether criminal charges of sexual assault against Jane were warranted. (*See id.* ¶¶ 141–42, 182–83, 188.) It is unclear whether Plaintiffs believe Waldman and Paredes undertook these acts because they were bribed or otherwise improperly influenced by the Beermann Defendants, or for other reasons. Finally, Plaintiffs allege, independently of the Beermann conspiracy, that Detective McEnerney's failure to properly investigate the sexual assault allegations made by Plaintiffs against Jane was consistent with an unofficial policy of the Village of Glencoe, established and implemented in part by McEnerney himself, "of responding differently and affording less protection to victims of rape and sexual assault, who were exclusively female in [the] Village of Glencoe, than to victims of other crimes." (*See id.* ¶ 257.) Because the impact of the alleged "systematic disregard" for investigations of reported rape and sexual assault exclusively harmed women and girls, Plaintiffs conclude that the conduct "cannot plausibly be explained" by the uneven allocation of police resources, or indeed, by any factor "except for an animus towards women and girls." (*Id.* ¶¶ 259–260.)

In Count I, Plaintiffs jointly claim that Judges Boyd and Goldfarb violated Plaintiffs' "constitutionally protected right to an impartial judge" by issuing "numerous adverse decisions which would not have been rendered by a fair, partial judge." (*Id.* ¶ 202–06.) In Count II, Gr. and Gw. claim that Boyd and Goldfarb violated their First Amendment rights by issuing a gag order against the children in the state court custody dispute (though it is not clear which judge allegedly entered the order). (*Id.* ¶¶ 207–10.) In Count III, Gr. and Gw. claim negligence against Traub and Waldman for violating the duty of confidentiality the therapists owed to the children as their patients. Also in Count III, all three Plaintiffs allege that DCFS employee Paredes violated her duty of care by failing to request the filing of charges against Jane. (*Id.* ¶¶ 211–14.) In Counts IV and V, Plaintiffs level civil RICO charges against all of the Beermann Defendants; Count VI is a claim of unjust enrichment against the Beermann law firm, specifically. (*See id.* ¶¶ 215–47.) In Count VII, Plaintiffs bring a state law civil conspiracy claim against the Beermann Defendants,

---

[1] According to Plaintiffs, Boyd, and then Goldfarb, have both recused themselves from the state court custody proceedings. (*See* Amended Compl. ¶¶ 121, 152.)

McEnerney, Boyd, and Goldfarb. (*Id.* ¶¶ 248–53.) In Count VIII, Gr. and Gw. claim that McEnerney committed a gender-based equal protection violation by failing to properly investigate the children's allegations of sexual assault against Jane; Gr. and Gw. also appear to bring a *Monell* claim against the Village of Glencoe based on its alleged gender-motivated policy of not investigating such reports. (*See id.* ¶¶ 198–201, 254–69.) Finally, in Count XI, Gr. and Gw. seek injunctive relief mandating that the Village of Glencoe "meaningfully investigate rape and sexual assault cases involve female victims." (*Id.* ¶¶ 277–78.)

## II. Claims by Minor Children Gr. and Gw.

Kenton properly represents only himself in this case. Minors such as Gr. and Gw., however, may not represent themselves in federal court, *T.W. by Enk v. Brophy*, 124 F.3d 893, 895 (7th Cir. 1997), and a parent may not represent their children pro se, as Kenton initially sought to do in this case. *See Foster v. Bd. of Educ. of City of Chicago*, 611 F. App'x 874, 877 (7th Cir. 2015) (collecting published opinions) (Seventh Circuit has "repeatedly held" that the general rule "prohibiting a nonlawyer from representing another person extends to a parent attempting to represent her minor child pro se"). After various Defendants alerted Plaintiffs to this issue, they sought to remedy the situation by obtaining the services of an attorney, Toma Makedonski, to represent Gr. and Gw. in this litigation. But attorneys may not file an appearance to represent clients in this court unless they are members in good standing of the general bar of the United States District Court for the Northern District of Illinois or admitted to practice *pro hac vice*. *See* N.D. ILL. R. 83.12, 83.14. Makedonski meets neither requirement and therefore may not represent Gr. and Gw. in this dispute. The minor children's claims are dismissed without prejudice.

Makedonski—who it appears is representing Gr. and Gw. in a lawsuit filed in state court against Jane (*see* [117] at 4)—was recruited to this case at some time prior to Plaintiffs' filing their amended complaint on December 9, 2024, as Makedonski signed that document on behalf of Gw. and Gr. (*See* Amended Compl. at 66.) At that time, Makedonski had yet to enter an appearance in this case. In a December 27, 2024 filing opposing the motions to dismiss filed by Defendants Traub and Waldman, Kenton claimed (incorrectly) that Makedonski had filed an appearance on the children's behalf, and that Makedonski would soon complete the process of seeking admission to the bar of this court or filing an application to appear *pro hac vice*. ([80] at 1.) That briefing was submitted on behalf of both Kenton and his minor children but was signed only by Kenton, and not Makedonski. (*See id.* at 5.)

Makedonski finally entered appearances on Gr. and Gw.'s behalf on February 9, 2025. (*See* [93, 94].) Curiously, the appearance forms were filed on the docket not by Makedonski but via pro se email submission—in other words, by Kenton. Nonetheless, the forms bear what appears to be Makedonski's electronic signature. Critically, however, both forms affirm that as of February 2025, Makedonski had yet to become a member of this court's bar or complete a *pro hac vice* application. In the time since, Makedonski has not completed either process—though this did not stop Makedonski from signing on Gr. and Gw.'s behalf Plaintiffs' April 20, 2025 opposition to Defendant Paredes' motion to dismiss. (*See* [107] at 4.)

Gr. and Gw.'s claims are dismissed without prejudice. Attorney Makedonski, a member of the bar of the State of Illinois, is reminded of his professional responsibilities. *See* ILL. R. PRO. CONDUCT 5.5(a) ("A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so"). The court addresses Kenton's remaining claims against Boyd, Goldfarb, the Beermann Defendants, McEnerney, and Paredes below.

3

### III. Claims by Kenton Girard

#### A. Boyd and Goldfarb

Kenton alleges that Judges Boyd and Goldfarb violated his constitutional right to an impartial judge and participated in a civil conspiracy with the Beermann Defendants and McEnerney. Boyd and Goldfarb moved to dismiss the initial complaint, arguing that this court must or should abstain from ruling on the claims against Boyd and Goldfarb, and that both judges are entitled to judicial immunity on the claims in any case. Plaintiffs responded on November 26, 2024 [68] but then proceeded to file the operative amended complaint on December 9, 2024. Boyd and Goldfarb again moved to dismiss, and the court entered an agreed briefing schedule that called for Plaintiff's response on January 31, 2025 and a reply on February 14, 2025 [83].

January 31 came and went without Plaintiffs filing a response or seeking additional time to do so. Boyd and Goldfarb filed their reply as directed on February 14 [94], reiterating their prior arguments and arguing that the court would also be justified in granting the motion because Plaintiffs' failure to respond constituted waiver. In the time since, Plaintiffs have failed to acknowledge Boyd and Goldfarb's pending motion and reply in support thereof, even as Plaintiffs have continued to actively participate in the case by filing motions of their own and responding both to a motion to dismiss filed by Defendant Paredes and a motion to intervene by a third party [97, 102, 107, 117].

Failing to respond to arguments in support of a motion to dismiss constitutes waiver, and this court could accept Boyd and Goldfarb's contention, supported by pertinent legal authority, that Plaintiffs' amended complaint does not state a valid claim against them. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466–67 (7th Cir. 2010). Plaintiffs' failure to respond aside, it is clear that judicial immunity bars Kenton's claims as against the two judges.[2] Indeed, even if it were true that they accepted bribes from the Beermann Defendants in exchange for entering orders favorable to their clients—which the judges strenuously deny—the judges could not be held liable for Kenton's alleged injuries flowing from those orders. A judge lacks judicial immunity only for "actions not taken in the judge's judicial capacity" or for actions "taken in the complete absence of all jurisdiction." *Holmes v. Marion Cnty. Sheriff's Off.*, 141 F. 4th 818, 824 (7th Cir. 2025) (quoting *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991)). Even if "done maliciously or corruptly," Boyd and Goldfarb's entering of orders were judicial acts taken pursuant to the jurisdiction of the Circuit Court of Cook County. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (citations omitted). Defendants' alleged acceptance of bribes is, of course, a non-judicial act, but the particularized harm to the Plaintiffs is the judges' entry of orders in Plaintiffs' custody dispute, and, as explained above, the judges are immune from liability for those acts.

Kenton's claims against Defendants Boyd and Goldfarb are dismissed. To the extent those claims are based on injuries that flow directly from orders issued by Boyd and Goldfarb as judges of the Circuit Court of Cook County, the claims are dismissed with prejudice, as Kenton has already amended his complaint once and any additional factual allegations made in a further amended pleading would have no bearing on the application of judicial immunity to such claims. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) (courts should give plaintiffs at least one opportunity to amend complaint before dismissing claims with prejudice; a court may decline to grant leave to amend claims where

---

[2] Though the court has no occasion to rule on Gr. and Gw.'s claims against Boyd and Goldfarb in this order, the same result would very likely hold for the minor children's claims against the judges.

it "is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted") (citations omitted).

### B. Civil RICO Claims (Beermann Defendants)

The court next addresses Kenton's civil RICO claims against the Beermann Defendants. The Beermann Defendants argue the court should decline jurisdiction over Kenton's claims against them because entertaining the claims would improperly intrude on the domain of the Circuit Court of Cook County, where the Girard custody dispute remains pending. The court agrees. Kenton's claims against the Beermann Defendants are dismissed without prejudice to refiling after the custody proceedings in state court have concluded.

Plaintiffs argue that traditional abstention doctrines—the *Rooker-Feldman* doctrine, the domestic-relations exception, and the *Younger*, *Burford*, and *Colorado River* abstention doctrines—are not applicable to the claims against these Defendants. (*See, e.g.* Pl. Resp. to Beermann Defs. Mot. to Dismiss [67] at 2–7.) But as the Seventh Circuit held in *J.B. v. Woodard*—a case Plaintiffs themselves rely on (*see* Pl. Resp. to Beermann Defs. Mot to Dismiss at 7)—the fact "that no abstention doctrine is an exact fit does not resolve the jurisdictional inquiry." 997 F.3d 714, 723 (7th Cir. 2021). Abstention may nonetheless be warranted where the adjudication of a plaintiff's claims would "threaten interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government," and more generally, where denying a federal forum would "clearly serve an important countervailing interest, including regard for federal-state relations." *Id.* (citations omitted). The *Woodard* court further suggested that abstention on these grounds may be especially appropriate where the plaintiff's complaint and the relief sought reveal a design of receiving a favorable ruling "that can be used affirmatively or offensively to shape—or perhaps change—the direction and course of the state court proceedings." *Id.*

In this case, it is plain that Kenton wishes to affect the state court proceedings in at least one respect: he asks this court to issue an injunction preventing the Beermann Defendants from practicing family law in Cook County at all, which would, of course, require Jane to obtain new representation in the custody dispute underlying this case. (*See* Amended Compl. at 65.) Moreover, even if the court were to consider Kenton's civil RICO claims against the Beermann Defendants while specifically ruling out that particular form of injunctive relief, the court has little doubt that full-blown federal litigation between Kenton and the Beermann Defendants would be disruptive of the state court custody proceedings. At minimum, the parallel litigation is likely to divert both parties' attention and resources from the underlying dispute. More importantly, however, this court's entertaining claims essentially alleging that the ongoing state proceedings are a sham would "reflect a lack of respect for the state's ability to resolve [the issues] properly before its courts." *Woodard*, 997 F. 3d at 724.

Kenton's civil RICO claims against the Beermann Defendants are dismissed without prejudice to refiling after the state court custody dispute has concluded.

### C. Remaining State Law Claims

That leaves Kenton's state law claims of civil conspiracy as against the Beermann Defendants and McEnerney, and negligence as against Paredes. There are no longer any federal claims before this court, and the complaint does not establish that the requirements of diversity jurisdiction under 28 U.SC. § 1332 are met as between Kenton and these Defendants. The court therefore declines to exercise supplemental jurisdiction over Kenton's remaining state law claims,

5

and those claims are dismissed without prejudice. *See Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) ("[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits") (citation omitted).

ENTER:

Dated: August 12, 2025

_____
REBECCA R. PALLMEYER
United States District Judge